UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| ROSA ACOSTA, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No. 5: 20-160-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| LEXINGTON GOLF & TRAVEL, LLC, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

The defendant and the six remaining plaintiffs have filed a motion for entry of a Consent Judgment in the plaintiffs' favor. [Record No. 32] The Proposed Consent Judgment ("Proposed Judgment") would set the defendant's liability at $255,000.00, with each plaintiff receiving an agreed-upon share. But the Proposed Judgment makes clear that none of the plaintiffs intend to recover any amount of money from the defendant. In fact, the plaintiffs would not be entitled to recover from the defendant under the Proposed Judgment. Instead, the Proposed Judgment entitles the plaintiffs to seek recovery from third-parties not before the Court. The parties' motion will be denied for the reasons explained below.

**I.**

The plaintiffs are professional female models who each "earn[] a living by commercializing her identity, image, likeness," and promotional services.[1] [Record No. 1, ¶

---

[1] There were originally seventeen plaintiffs in this matter but eleven have been dismissed by voluntary stipulation. [*See* Record Nos. 31, 33.] The remaining six plaintiffs include Rosa Acosta, Jessica Burciaga, Andra Cheri Moreland, Helen Green, Lina Posada, and Rhian Sugden. [*See* Record No. 32, p. 1.]

32] Defendant, Lexington Golf & Travel, LLC is a strip club that allegedly utilized the plaintiffs' likenesses in advertisements posted on social media platforms without the plaintiffs' permission. [*Id.* at ¶ 1] By implying that the plaintiffs were affiliated with the defendant's business, the plaintiffs claim to have suffered harm to their "reputations and brands." [*Id.* at ¶ 5] The plaintiffs brought this action alleging violations of the Lanham Act, 15 U.S.C. § 1125(a), *et seq.*, Kentucky's statutory right of publicity, Ky. Rev. Stat. § 391.170, *et seq.*, and various breaches of common law duties. Only Lexington Golf & Travel, LLC, was named as a defendant.

A Scheduling Order was entered August 10, 2020. [Record No. 14] On January 19, 2021, the plaintiffs filed an "Unopposed Motion to Extend [the] Deadlines" contained in the Scheduling Order by 90 days. [Record No. 22, p. 1 (typeface altered)] The plaintiffs advised that additional time was required for "continued negotiations of a global settlement of a significant number of Lanham Act and misappropriation of likeness litigations involving several different businesses, including [the defendant], insured by the same commercial general liability carrier . . . ." [*Id.*] The defendant offered a "clarification" the following day: while it did not oppose the extension for completing discovery in this matter, it "relie[d] solely on counsel for [the plaintiffs'] assertion that resolution of this matter is possible in the future." [Record No. 23, p. 1] The defendant made clear that it had little, if any, involvement in the settlement discussions "in other cases." [*Id.*] The Court granted the extension of time and entered an Amended Scheduling Order. [Record No. 24]

In a joint status report filed March 1, 2021, the parties reported that the plaintiffs "continued to investigate potential settlement through [the defendant's] insurance carrier . . . ." [Record No. 26] The parties' June status report indicated that eleven of the plaintiffs had

reached a confidential settlement agreement and would be submitting a stipulated dismissal with respect to their claims. [Record No. 29] It also stated that the remaining six plaintiffs would

> petition the Court for entry of final consent judgment in the aggregate amount of $255,000.00 in [the plaintiffs'] favor in conjunction with [the defendant's] assignment of its rights and claims against insurers Golden Bear Insurance Company and James River Insurance Company to [the plaintiffs] and [the plaintiffs'] covenant not to execute the judgment against Defendant.

[*Id.* at p. 1]

The Proposed Judgment details the parties' agreement that if the defendant did, in fact, violate the plaintiffs' rights to publicity under both federal and state law, it would be liable for $255,000.00, an amount of damages deemed reasonable by the parties. [Record No. 32-1, ¶ 9] The Proposed Judgment also notes that the defendant was insured by Golden Bear Insurance Company ("Golden Bear") and James River Insurance Company ("James River") during the defendant's allegedly unlawful conduct. [*Id.* at ¶¶ 4, 5] The parties also claim that the insurers denied the defendant's request for coverage and refused to indemnify it through letters dated May 13, 2020, and June 26, 2020, respectively. [*Id.* at ¶¶ 7, 8]

Based on this information, the Proposed Judgment outlines the parties' agreement. The agreement is three-fold. First, the parties agree that $255,000.00 is a reasonable amount to settle the plaintiffs' claims against the defendant ("the Stipulated Judgment"). [Record No. 32-1, ¶ 9] Specifically, they agree that the Stipulated Judgment "is reasonable in light of what a jury might reasonably award" the plaintiffs if this case proceeded to trial. [*Id.* at ¶ 10] Second, the parties agree that the defendant, "once the Stipulated Judgment is entered," will assign to the plaintiffs "all of its rights, claims, and causes of action against Golden Bear and James River" arising out of the actions giving rise to the plaintiffs' claims ("Assignment").

[*Id.* at ¶ 11] Third, the plaintiffs "agree to not take any action of any kind to . . . collect . . . the Stipulated Judgment" against the defendant, "save and except for [the defendant's] assets consisting of any and all right, title and interest in the Golden Bear and/or James River policies" together with the rights granted by the Assignment. [*Id.* at ¶ 12] This third agreement is referred to as the "LGT Covenant" and is purportedly made "in consideration for [the Assignment], and effective after [the Assignment] ha[s] been delivered to [the plaintiffs]." [*Id.*]

## II.

The parties request that the Court enter the Proposed Judgment and retain jurisdiction over this matter to ensure it is effectuated. "A consent decree, although in effect a final judgment, is a contract founded on the agreement of the parties." *Vogel v. City of Cincinnati*, 959 F.2d 594, 598 (6th Cir. 1992). But because of their "dual character" as both contracts and judicial decrees, their terms may only reach as far as a court's jurisdiction. *Loc. No. 93, Int'l Ass'n of Firefighters, AFL-CIO C.L.C. v. City of Cleveland*, 478 U.S. 501, 519 (1986). And a court has a duty to police the boundaries of its jurisdiction. *See, e.g.*, *Lane v. City of LaFollette, Tenn.*, 490 F.3d 410, 423 n.5 (6th Cir. 2007). To that end, it is a "deep-rooted historic tradition" of American courts that "[a] judgment or decree among parties to a lawsuit resolves issues as among them, but it does not conclude the rights of strangers to those proceedings." *Martin v. Wilks*, 490 U.S. 755, 762 (1989) (citation omitted).

Here, the agreement contemplates two parties not before the Court, Golden Bear and James River ("the insurers"). If the Court were to grant the motion: the defendant would face no liability; the plaintiffs would be free to bring a cause of action against the non-parties; and the plaintiffs could rely on a court-endorsed "reasonable" value for their claims in any

- 4 -

subsequent proceedings. The parties request that this value be deemed reasonable without input from any entity whose interests are adverse to the parties before the Court, let alone the insurers themselves.

Despite these oddities, the parties contend that their agreement should be adopted because it is "reasonable in amount and untainted by bad faith." [Record No. 32-2, p. 1] They cite a decision of the Western District of Kentucky, *Ayers v. C & D Gen. Contractors*, in which Judge Heyburn concluded that "consent judgments coupled with covenants not to execute are enforceable" in Kentucky if the amount awarded is reasonable. 269 F. Supp. 2d 911, 916 (W.D. Ky. 2003). Judge Heyburn refused to adopt the consent judgment in *Ayers* before hearing argument from the parties about the reasonableness of the settlement amount. *Id.* at 917. In this case, the parties note that each plaintiff would take home an amount less than the average recovery in the examples provided, and that a non-retained expert could attest to the reasonable of the damages. [Record No. 32-2, pp. 2-3]

But *Ayers* is inapposite for reasons already stated. There, unlike here, the insurers were before the court. *See* 269 F. Supp. at 917 (finding that the judgment would be adopted unless the insurers could not show it was unreasonable). The parties acknowledge as much in a footnote in their Memorandum in Support, stating that here the insurers' "opportunity . . . to challenge the consent judgment's validity will likely come in subsequent proceedings brought by [the plaintiffs] as assignees against those insurers later." [Record No. 32-2, p. 1 n.1] Aside from rendering *Ayers* inapplicable to this matter, this statement overlooks a glaring problem: a non-party to a consent judgment does not have standing to challenge the terms of the decree or a party's interpretation of it. *See Vogel*, 959 F.2d at 598. Thus, it is clear that the insurers

will never have an opportunity to weigh in on the reasonableness of the amount contained in the Proposed Judgment, if the Court adopts it.

Other courts have cautioned against adopting agreements like the Proposed Judgment because of the "high potential for fraud or collusion" inherent in an agreement where an insured "will not be personally responsible for th[e] damages." *Cont'l Cas. Co. v. Hempel*, 4 F. App'x 703, 717 (10th Cir. 2001). Courts that adopt such agreements make a policy judgment that "it is better to have the insurer who makes the decision to contest coverage bear the risk" of later paying damages on a wrongful denial. *Ayers*, 269 F. Supp. 2d at 916. But as the Fifth Circuit held in recognizing these agreements, underlying these considerations is the

> well-settled principle that where a person is responsible over to another, either by operation of law or express contract, and he is *duly notified* of the pendency of the suit against the person to whom he is liable over, and *full opportunity is afforded him to defend the action*, the judgment, if obtained without fraud or collusion, will be conclusive against him, whether he appeared or not.

*Coblentz v. Am. Sur. Co. of New York*, 416 F.2d 1059, 1063 (5th Cir. 1969) (emphasis added). The noted skepticism among courts about these agreements is surely heightened where, as here, one of the impacted parties has not been provided a full opportunity to defend the action.

To be sure, the parties provide numerous examples of district courts entering consent judgments with terms identical to the Proposed Judgment. [*See* Record No. 32-3.] Of course, the filings in these matters are not before the Court. The filings could provide additional context that is not gleaned from the parties' submissions. But even if these consent judgments were entered in cases identical to this matter, the Court is not bound by these decisions to enter the Proposed Judgment. Additionally, the examples vary in their circumstances and content. Some followed jury verdicts or stemmed from default judgments. [*See* Record No. 32-2, pp. 2-26.] Some include the parties' Proposed Judgment nearly verbatim [*see* Record No. 32-2,

pp. 32-36], while others add additional terms [*see id.* at pp. 31 (requiring the parties to move for dismissal after the assignment becomes effective), 69 (same).]. Two of the judgments alter the parties' agreement altogether by simply ordering that the defendant is liable for a money judgment, despite the parties' agreement that the plaintiffs are not entitled to recover from the defendant. [*See id.* at pp. 75-83.] The only conclusion the Court can draw from these examples is that these agreements are not uniformly accepted by courts.

None of this is to say that the Proposed Judgment is wholly objectionable. The defendant is free to assign his rights to the plaintiffs, and the plaintiffs are free to forego their claims against the defendant in exchange for valid consideration (such as damages and the Assignment). *See Ayers*, 29 F. Supp. 2d at 916 (surveying Kentucky caselaw and finding that "consent judgments coupled with covenants not to execute are enforceable"). Where the agreement goes too far is the LGT Covenant, which, by operation, changes the nature of the cause of action before the Court. If the Court were to grant the Proposed Judgment, it would be left to supervise the plaintiffs, who would be occupying the place of the defendant, as they attempted to recover from the insurers. The Court refuses to do so because its continuing interest over such claims is unclear. Neither those claims nor the insurers are before the Court, and the parties have made no effort to join them.

Based on the foregoing analysis and discussion, it is hereby

**ORDERED** as follows:

1. The parties' motion for entry of a Consent Judgment [Record No. 32] is **DENIED**.

2. Within **fourteen (14) days**, the parties are directed to **SHOW CAUSE**, jointly or individually, why the deadlines contained in the Scheduling Order should not be re-imposed immediately.

Dated: July 2, 2021.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky